In re Sam BURGESS, Jr. and Irene P. Burgess, Debtors.

**SEARS, ROEBUCK AND COMPANY, Movant,**

v.

**Sam BURGESS, Jr. and Irene P. Burgess, Respondents.**

Bankruptcy No. 5–91–00682.

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

July 13, 1993.

Charles Phillips, Wyomissing, PA, for movant.

Joseph Murray, Stroudsburg, PA, for debtors/respondents.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

On January 10, 1992, the Movant, Sears, Roebuck and Company, (hereinafter "Sears"), filed a Motion for Relief from Automatic Stay seeking relief relative to a number of household items purchased on a Sears Account in the year 1990. At the time of the Bankruptcy filing, the total balance due on the Sears Account, as agreed to by the parties, was Three Thousand Six Hundred Seventy and 28/100 Dollars ($3,670.28). The parties have further agreed that the debt owing to Sears is collateralized by a perfected security interest in the aforesaid household goods.

It is the Debtors' position that Sears was duly listed in the bankruptcy schedules albeit as an unsecured creditor; that they received notice of the Chapter 13 plan to which they did not object; and that the plan was confirmed on December 3, 1991.

The Debtors maintain that by not objecting to the plan, Sears effectively accepted the plan and, therefore, cannot be given relief from the automatic stay absent proof of a default in any of the payments required under the plan.

Sears, on the other hand, alleges that on June 3, 1991, they filed a secured Proof of Claim which was not objected to and is therefore deemed allowed. Sears further maintains that a secured creditor holding an allowed claim is not bound by the terms of a Debtor's confirmed Chapter 13 plan. Sears further argues that since the plan does not provide for treatment of its allowed secured claim, it lacks adequate protection of its interest and is therefore entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d).

The Debtors have moved for summary judgment suggesting that the facts set forth and admitted require judgment in their favor, as a matter of law.

Our analysis will begin with the provisions of 11 U.S.C. § 1327(a), which indicate that the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan.

The plan, being brief, is set forth in a footnote.[1] In summary, the plan provides that distribution to unsecured creditors shall total Three Thousand Two Hundred Forty Dollars ($3,240.00). The plan further indicates that "No amounts shall be paid through the plan to secured creditors; the debtors are current in their payments to secured creditors.".

Lastly, under the paragraph entitled "Secured Claims" the plan provides that the below-indicated creditors shall receive the stated amount:

a. Franklin First Federal — $1,181.00 per month
b. The Money Store — $ 254.00 per month
c. United Teletec Federal Credit Union — $ 234.00 per month

The issue becomes whether Sears, a secured creditor, is prevented from seeking relief because of a Chapter 13 confirmed plan which fails to identify it as a recipient of payments either within the Chapter 13 plan or outside of the plan.

Stated another way, is the fact that Sears is bound by the terms of the Chapter 13 plan sufficient to bar it from seeking relief from the automatic stay absent a default in the terms of the Chapter 13 plan?

■ The first question that must be addressed is the extent to which the automatic stay is still in effect relative to Sears' collateral.

An examination of 11 U.S.C. § 362(c)(1) states that "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; ...".

As we know from a review of 11 U.S.C. § 541, the commencement of a bankruptcy case creates an estate comprised of all the legal or equitable interest of the Debtor in property as of the commencement of the case. Clearly, the collateral of Sears was property of the estate at the time this Chapter 13 was filed.

To determine whether this "property of the estate" remains so defined, we must turn our attention to 11 U.S.C. § 1327(b) which reads as follows:

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

The plan having been confirmed on December 3, 1991, the collateral of Sears was no longer "property of the estate" since this property now became vested in the Debtors.

Nevertheless, Section 362(a)(5) provides that the bankruptcy filing stays any entity from pursuing "any act to create, perfect, or enforce against *property of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case ..." [Emphasis ours].

Accordingly, although 11 U.S.C. § 362(c)(1) would not apply post confirma-

---

1. {Caption}

**CHAPTER 13 PLAN**

COMES NOW, Sam Burgess, Jr., and Irene Powell Burgess, the above-captioned debtors, and file the following Chapter 13 Plan and request that it be confirmed:

1. PAYMENTS TO TRUSTEE: The Debtors shall pay the sum of $100.00 per month to the Chapter 13 Trustee for thirty-six (36) months for a total of $3,600.00.

2. CLASSIFICATION OF CLAIMS: This Plan classifies claims as follows: priority claims, secured claims, and unsecured claims.

3. PRIORITY CLAIMS: There are no priority claims.

4. SECURED CLAIMS: Arrearages. No amounts shall be paid through the Plan to secured creditors; the debtors are current in their payments to secured creditors.

5. SECURED CLAIMS: Regular monthly payments. The debtors shall maintain their regular monthly payments to:

a. Franklin First Federal — $1,181.00 per month
b. The Money Store — $ 254.00 per month
c. United Teletec Federal Credit Union — $ 234.00 per month

6. UNSECURED CLAIMS: Payments will be made to the holders of unsecured claims. The total amount to be distributed pro rata to those who file proofs of claim is $3,240.00.

7. COMPENSATION TO TRUSTEE: The Chapter 13 Trustee will receive compensation through the Plan in the amount of $360.00.

8. SUMMARY OF PLAN:

A. TOTAL PAYMENTS TO TRUSTEE — $3,600.00 (100 × 36)

B. DISTRIBUTION BY TRUSTEE
Chapter 13 Trustee — $ 360.00
Unsecured Creditors — $3,240.00
TOTAL PLAN DISTRIBUTION: $3,600.00

C. PAYMENTS OUTSIDE PLAN:
$1,181.00 Monthly to Franklin First Federal
$ 254.00 Monthly to The Money Store
$ 234.00 Monthly to United Teletec F.C.U.

{Dated}                    {Signatures}

tion, Section 362(c)(2) would be applicable and would continue the stay against property of the debtor until closing of the case, dismissal of the case or discharge of the debtor, whichever first occurs.

■ This, however, does not end our inquiry. We must next determine whether the security interest of Sears continued in existence post-petition. If that security interest does not continue, then Sears would be hard-pressed to establish "cause" under the provisions of 11 U.S.C. § 362(d)(1) or lack of "equity" under 11 U.S.C. § 362(d)(2).

11 U.S.C. § 1327(c) must be applied in determining the current, post-confirmation status of the Sears' security interest. That provisions reads as follows:

> Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

In answering the question as to whether Sears has been "provided for" by the plan, we can turn for direction to the recent United States Supreme Court case of *Rake v. Wade*, — U.S. —, 113 S.Ct. 2187, 124 L.Ed.2d 424 (U.S.).

> The most natural reading of the phrase to "provid[e] for by the plan" is to "make a provision for" or "stipulate to" something in a plan. *Id.* at p. —, 113 S.Ct. at p. 2192. ... Other provisions of Chapter 13 containing the phrase "provided for by the plan" make clear that petitioners' plans provided for respondent's home mortgage claim. See *United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 [108 S.Ct. 626, 630, 98 L.Ed.2d 740] ʻ1988) (statutory terms are often "clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes [their] meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law") (citation omitted). Section 1328(a), for example, utilizes the phrase "provided for by the plan" in dealing with the discharge of debts under Chapter 13. As used in Sec-

tion 1328(a), that phrase is commonly understood to mean that a plan "makes a provision" for, "deals with," or even "refers to" a claim. See 5 *Collier P 1328.01, at 1328-9. Rake v. Wade*, — U.S. —, —, 113 S.Ct. 2187, 2193, 124 L.Ed.2d 424.

■ From a reading of *Rake v. Wade*, the term "provided for" carries with it the implication that the creditor, at the very least, must be "mentioned" by name or by category in a way that affects it with regard to an identifiable obligation.

■ In analyzing the intent of the Code drafters in utilizing terminologies such as "provided for", this Court is mindful that the provisions of the statute should be read in order to give effect to all of its provisions. *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961). Because Section 1327(c) has the rather harsh impact of actually dislodging a lien of a creditor who is "provided for by the plan", it is imperative that this Court consider not only the wording of the plan but also the adequacy of notice and a determination of whether the due process rights of a secured creditor have been protected. A Chapter 13 plan must bear "constitutional and statutory muster as to the vested property rights of secured creditors". *Matter of Anderson*, 6 B.R. 601, 609 (Bankr.S.D.Ohio 1980). Without the measure of protection afforded by clear language in the plan and sufficient notice to the creditor, the plan can be no more binding than if it had sat, unfiled, on the lawyer's desk.

The plan and the notice must be evaluated on a case-by-case basis since what may be sufficient as to one creditor may be insufficient as to another because of the language utilized.

The plan in the case before us has been reproduced in footnote one (1). The notice with regard to that plan was provided by a copy of the entire plan on the back of the notice of the First Meeting of Creditors. That notice clearly indicated that "objections to the plan must be filed on or before June 28, 1991".

Had Sears been found to be an unsecured creditor, as the Debtors had originally scheduled, it clearly would have shared in a total fund of Three Thousand Two Hundred Forty Dollars ($3,240.00).

Had Sears understood itself to be a secured creditor, it is reasonable to conclude that a reading of the notice would have indicated that it would receive no amounts of arrearages under the plan since "No amounts shall be paid through the plan to secured creditors; the debtors are current in their payments to secured creditors.".

Moreover, the Debtors volunteered in their plan that three (3) specific secured creditors would be paid their regular monthly payments.

Because the Debtors originally scheduled Sears as an unsecured creditor, it is reasonable to conclude that Sears was "provided for" conditioned on their treatment as an unsecured creditor. Since the parties now stipulate that Sears is a secured creditor, the Debtors, understandably, did not provide for Sears as a secured creditor.

■ Having determined that Sears is a creditor secured by property of the Debtors, this Court must apply the provisions of 11 U.S.C. § 362(d) to determine whether the movant may be entitled to relief.

The Debtors maintain that the failure of Sears to object to the plan prevents it from now complaining about the lack of payment. In disposing of that argument, we are compelled to agree with *In re Harlan*, 783 F.2d 839 (9th Cir.1986) that a Chapter 13 plan must "reveal" the debtor's intention to disregard the terms of an obligation, at least by implication. In the absence of that revelation, Sears should not have expected to have the terms of its security agreement modified including its provisions regarding payment.

Accordingly, this Court issues the attached ORDER.

### ORDER

Upon consideration of the Motion for Relief from Automatic Stay filed by Sears, Roebuck and Company, and the answer of the Debtors thereto, this Court concludes that relief from the automatic stay is not barred by the terms of the Chapter 13 plan. Accordingly, the Debtors' Motion for Summary Judgment is denied.

Final Hearing on the Motion for Relief from Stay is set for *10:00 o'clock A.M.* on *Monday, August 2, 1993* in Courtroom No. 1, Federal Building, 197 South Main Street, Wilkes–Barre, Pennsylvania.