**In re Roy B. HENLINE and Rebecca A. Henline, Debtors.**

**Bankruptcy No. 96–34033 DDO.**

United States Bankruptcy Court, D. Minnesota, Third Division.

Dec. 21, 1999.

brought by Dokmo II Townhouse Association, Inc. Appearances were noted in the record of the hearing. The Court, having heard arguments of counsel and reviewed the briefs submitted, now makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

# I.

## INTRODUCTION

Dokmo II Townhouse Association, Inc. ("Movant") requests an order of the Court modifying the automatic stay to permit Movant to record against the title to real property and townhouse unit owned by the Debtors, Roy B. Henline and Rebecca A. Henline ("Debtors"), a statement or notice of a lien in favor of Movant, and to permit Movant to foreclose that lien. The Motion is based upon Debtors' failure to pay to Movant postpetition debt, but the relief sought is to permit foreclosure for both prepetition and postpetition debt.

Debtors responded to the motion, alleging that Movant has violated the automatic stay by certain post confirmation collection efforts, thereby damaging the Debtors by at least whatever might be the allowed amount of the Movant's postpetition debt. They dispute the nature of the prepetition claim and postpetition debt, arguing that it is unsecured; and, Debtors challenge the amount of the postpetition debt. Finally, Debtors represent that they stand ready to pay the postpetition debt once the nature and amount have been determined. They argue that no cause exists for granting the motion; and, that the motion should be denied in the best interests of other creditors.

Rebecca A. Henline, Roy B. Henline, Vadnais Heights, MN, pro se.

Jasmine Z. Keller, Minneapolis, MN, trustee.

## ORDER

DENNIS D. O'BRIEN, Chief Judge.

This matter was heard on November 24, 1999 on motion for relief from stay

# II.

## STATEMENT OF FACTS

*Case Filing: Movant's Prepetition Claim, And Alleged Postpetition Debt*

Debtors filed their Petition in this Chapter 13 case on July 22, 1996. Debtors'

Chapter 13 Plan was confirmed by the Court in an Order entered on September 12, 1996. Movant filed a secured claim (the "Claim") in this case on August 29, 1996 for prepetition debt owed by Debtors to Movant in the amount of $4,989.82, which is secured by a lien on Debtors' homestead. The claim is for homeowners association dues and charges related to the property. The Debtors did not object to either the nature or amount of the filed claim; but, the confirmed plan does not mention Movant or the claim.

Debtors had scheduled Movant's claim as · unsecured. The value of Debtors' homestead was listed at $61,000 and the lien of Chemical Mortgage Co., the holder of the first mortgage, was listed at $64,000. In addition there was a federal tax lien in the amount of $28,018.89 filed on· May 11, 1992, and a state tax lien in the amount of $2,520.26, filed on October 25, 1994. Movant's lien was subordinate to the lien of Chemical Mortgage Co. and the Internal Revenue Service. Movant has received no payment from the Chapter 13 trustee.

According to Movant, the postpetition debt owed by Debtors to Movant is $5,295.22, itemized as follows:

| | |
|---|---:|
| 1. Unpaid portion of the monthly installment of the 1998 annual (common expense) assessment levied against the Lot for May, 1998 | $ 14.11 |
| 2. Unpaid monthly installment of the 1998 annual (common expense) assessment levied against the Lot for December, 1998 | $ 84.00 |
| 3. Unpaid monthly installments of the 1999 annual (common expense) assessment levied against the Lot for January through and including November, 1999, at $88.00 per month | $ 968.00 |
| 4. Unpaid monthly installments of the special (common expense) assessment levied against the Lot for May and December, 1998, and January through and including June, 1999, at $36.20 per month | $ 289.60 |
| 5. Unpaid insurance premium assessment levied against the Lot for December, 1998 | $ 110.00 |
| 6. Unpaid late charges and interest, levied against the Lot from April 27, 1998 through October 25, 1999 | $ 234.39 |
| 7. Unpaid attorney's fees and costs of collection, through the date hereof | $3,595.12 |
| Total post-petition debt | $5,295.22 |

Movant has not filed a postpetition claim in the case; nor have Debtors filed a postpetition claim on Movant's behalf.

### Debtor Creditor Relationship

Movant is the homeowners association that operates, maintains and manages Dokmo II Townhomes ("Dokmo II"), located in Vadnais Heights, Minnesota. The Debtors listed in Schedule A of their Petition the real property and townhome unit located at 4224 Bridgewood Terrace, Vadnais Heights, Minnesota (collectively the "Lot"). The Lot is part of Dokmo II and is legally described as:

> Lot 16, Block 2, Dokmo 2nd Addition, Ramsey County, Minnesota.

The Debtors are the record owners of the fee title of the Lot as shown on that certain Warranty Deed, dated October 22, 1982, and recorded in the office of the County Recorder in and for Ramsey County, Minnesota on December 27, 1982 as Document No. 2165005 (the "Warranty Deed"). The property is the Debtors' homestead.

### Recorded Covenants and Restrictions on the Lot

All the property comprising Dokmo II, including the Lot, is held, platted, built upon, sold, conveyed and occupied subject to the easements, covenants, conditions, restrictions, charges, and liens contained in (i) the Declaration of Covenants, Conditions and Restrictions for Dokmo II recorded in the office of the County Recorder in and for Ramsey County, Minnesota as Document No. 2115987 (the "Declaration"), and (ii) Movant's By–Laws recorded in said office as Document No. 2122602 (the "By–Laws").

The preamble of the Declaration establishes that all easements, covenants, conditions, restrictions, charges, liens and equitable servitudes provided in the Declaration shall run with the real property comprising Dokmo II, in furtherance of an overall development plan. Movant

and Debtors are bound by those provisions.

*Definition of "Lot" and "Owner" as Used in the Declaration*

Pursuant to Article I, Section 6 of the Declaration and Article II, Section 3 of the By–Laws, the term "Lot," as used in the Declaration and By–Laws, means and refers to any plot of land which may be shown upon any subdivision map of the property comprising Dokmo II. Pursuant to Article I, Section 2 the Declaration and Article II, Section 4 of the By–Laws, the term "Owner," as used in the Declaration and By–Laws, means and refers to, among other person or entities, the collective holders of the fee simple absolute title to any Lot, including any contract for deed vendors. Pursuant to those definitions, the Lot and Debtors, as Owners of the Lot, are subject to and bound by the Declaration and the By–Laws.

*Debtor's Membership In Movant, and Obligations*

Pursuant to Article II, Section 1 of the Declaration and Article IV, Section I of the By–Laws, Debtors became members of Movant through their status as Owners of the Lot. Pursuant to the preamble of the Declaration, Debtors, as the Owners of the Lot, are obligated to abide by and comply with the terms, conditions, easements, covenants, restrictions, charges, liens and equitable servitudes in the Declaration. Pursuant to Article III, Section I of the Declaration and Article XII of the bylaws, Debtors agreed that their membership in Movant is subject to their obligations to pay all common expense assessments and/or installments thereof assessed to and levied against the Lot by Movant, together with interest, costs and reasonable attorneys' fees.

*Movant's Authority to Levy Common Expenses and Other Charges Against the Lot*

Pursuant to Article III of the Declaration, Movant, through its Board of Directors levies common expense assessments and/or installments thereof against all of the Lots at Dokmo II to (i) pay Movant's common expenses including, but not limited to, blanket insurance premiums and exterior maintenance and repair upon each Lot at Dokmo II, and (ii) promote the recreation, health, safety and welfare of the residents of and dwellings in Dokmo II. Under Article III, Section I of the Declaration, the unpaid common expense assessments and/or installments thereof, together with all costs of collection, late charges, interest and reasonable attorney's fees become a continuing lien against the Lot in favor of Movant.

*Debtors' Personal Obligations to Pay Debt To Movant*

Under Article III, Section I of the Declaration and Article XII of the By–Laws, the common expense assessments and/or installments thereof (including insurance premiums paid for by Movant) assessed to and levied against the Lot, and charged to the Debtors by Movant, together with all costs of collection of unpaid assessments, late charges, interest and reasonable attorneys' fees, become the personal obligation of the Debtors.

*Movant's Authority To Take Legal Action To Collect Debt*

Pursuant to Article III, Section 8 and Article VIII, Section 1 of the Declaration, Movant has the authority to commence legal action against the Debtors, and to foreclose Movant's lien against the Lot, for unpaid monthly assessments, insurance premiums paid for by Movant, late charges, interest, costs and reasonable attorneys' fees incurred in connection with the collection of said unpaid amounts.

***Chapter 13 Plan***

Debtors' original plan filed with their petition was completed on an old form no longer properly used under the Local Rules when the case was filed. The plan contained the following language:

4. General Provisions. Liens on household goods and other property of the estate which are avoidable under 11 U.S.C. § 522(f) are hereby avoided.

Debtor submits all future earnings or other future income to such supervision and control of the trustee as is necessary for the execution of the plan. *Property of the estate shall vest in the debtor upon dismissal, conversion or discharge under 11 U.S.C. §§ 1307 or 1328 unless the court orders otherwise while the case is pending.* Debtor represents that the plan is proposed in good faith and not by any means forbidden by law and that the debtor will be able to make all payments under the plan and comply with the plan. (emphasis added) Prior to confirmation, Debtors amended their plan to meet an objection to confirmation by another secured creditor, their home mortgage lender. The amended plan was completed on form 602, then required by Local Rule 602. That form did not contain the above vesting language. It was the amended plan that was confirmed by the Court on September 12, 1996, pursuant to withdrawal of objection by the objecting creditor. A copy of the amended plan was furnished the Chapter 13 trustee by the Debtors, but the original was never filed with the Court.

### Postconfirmation Collection Efforts

In May, 1998, Movant brought a complaint in Ramsey County District Court and ultimately obtained entry of judgement against Debtors for postpetition debt. Debtors argue that because of these actions they were required to make payments from property of the estate in the amount of $2,700. Additionally, Debtors claim that during a period when they were making payments as promised, together with payments on current amounts, Movant twice garnished their bank accounts causing additional damage to them. Finally, in April, 1999, Movant commenced a new action against Debtors to collect postpetition delinquencies. Debtors allege that they are entitled to recover actual damages, including costs and attorneys' fees as well as punitive damages under 11 U.S.C. § 362(h), for these postpetition collection actions of Movant.

## III.

## DISCUSSION

### Modification Of Movant's Prepetition Claim Under 11 U.S.C. § 1322(b)

*Was Movant's prepetition claim subject to modification under 11 U.S.C. § 1322(b)(2)? No*

■ Debtors argue that they were entitled to treat Movant's prepetition claim as unsecured because the lien had no value. According to Debtors, the claim

> was modified as permitted in 11 U.S.C. § 1322(b)(2). Although the Movant's Claim was secured by the Debtors' principal residence, there was no value to the security interest.

> *(Debtors' Resp., November 23, 1999, p. 1, par 2.)*

11 U.S.C. § 1322(b)(2) provides:

> § 1322. Contents of plan

> (b) Subject to subsections (a) and (c) of this section, the plan may—

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

11 U.S.C. § 1322(b)(2) prohibits the modification of claims secured only by an interest in a debtor's homestead. The section does not limit the prohibition against modification to undersecured claims. It does not permit the modification of any secured claim secured only by homesteads, even where there exists no liquidation value to the lien. *In re Hussman*, 133 B.R. 490 (Bankr.D.Minn.1991). To hold otherwise would require reading into the section a qualification that simply is not there, and would constitute legislation by judicial fiat.

Movant's prepetition claim, filed as a secured claim, was not subject to modification under 11 U.S.C. § 1322(b)(2), and was

not properly treated as an unsecured claim by Debtors in their confirmed plan.

### Effect Of Confirmation On Movant's Prepetition Claim

*Did confirmation of the plan strip Movant's lien for prepetition debt under 11 U.S.C. § 1327(c)? No*

■■■■ 11 U.S.C. § 1327 provides:

§ 1327. Effect of confirmation

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

A creditor can lose its lien if the claim is treated as unsecured in a confirmed plan, even though the treatment might otherwise be impermissible under the Code. *Harmon v. United States*, 101 F.3d 574 (8th Cir.1996); *FDIC v. Union Entities (In re Be–Mac Transp. Co.)*, 83 F.3d 1020 (8th Cir.1996); *Matter of Penrod*, 50 F.3d 459 (7th Cir.1995). But, a lien is an interest in property protected by the due process guarantees of the Fifth Amendment to the United States Constitution. Threshold constitutional due process guaranties require the affected lienholder's participation in a proceeding that results in the taking of the lienholder's interest in property.

Participation in the confirmation process by a lien creditor normally has at least two requisites: 1) the creditor, or another on the creditor's behalf, has filed a claim in the case; and, 2) the plan identifies the creditor and treats the claim. *Matter of Penrod*, 50 F.3d 459 (7th Cir.1995). Here, although Movant filed a prepetition claim, Movant was not identified in the plan and the claim was not treated.

■■■ Debtors scheduled Movant's claim as unsecured in their liability schedules filed with the petition, and they treated unsecured claims in the plan in an amount corresponding to the total amount of the scheduled unsecured claims. But, the plan provision for unsecured claims did not identify the claimants. The plan was insufficient to identify and provide for Movant's claim, allowing for Movant's participation in the confirmation process. Lien creditors, whose prepetition claims are not provided for in a plan, are entitled to ignore the confirmation process and plan; and, to proceed to collect their debts through foreclosure of their liens after bankruptcy, or earlier upon obtaining relief from the 11 U.S.C. § 362 stay. *In re Be–Mac Transp. Co, 1025.*

In *Matter of Penrod, supra*, the plan was silent regarding postconfirmation retention of the lien by the lien creditor. The court in that case ruled that confirmation of the plan stripped the lien creditor of the lien under 11 U.S.C. § 1327(c). But, as the *Penrod* court observed, the lien creditor's claim was separately classified in the plan and the lien creditor was identified as the holder of the claim in that class. *Matter of Penrod*, 50 F.3d 459, 461 (7th Cir.1995). The plan in *Penrod* allowed for the lien creditor to participate in the confirmation process in a manner that satisfied the Fifth Amendment. Not so here. To hold that Debtors' plan provided for Movant's claim and lien, allowing Movant to participate in the confirmation process resulting in loss of the lien by application of § 1327(c), would be to allow lien stripping by ambush. That would violate the due process guarantees of the Fifth Amendment to the United States Constitution against the taking of property.

Confirmation of Debtors' plan did not result in stripping Movant's lien under 11 U.S.C. § 1327(c).

### Application Of The § 362 Stay To Foreclosure Of Movant's Lien To Collect The Prepetition Debt

*Does the § 362 stay prevent postconfirmation foreclosure of Movant's lien to collect prepetition debt? Yes*

■ 11 U.S.C. § 362(a)(5) provides:

§ 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(5) any act to ... enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

11 U.S.C. § 362(c) provides:

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

    (A) the time the case is closed;

    (B) the time the case is dismissed; or

    (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

Movant argues that the stay should not apply because the liened property is no longer property of the estate. Debtors' homestead was claimed exempt without objection, and, in any event, all property of the estate vested back in Debtors upon confirmation of their plan. *See,* 11 U.S.C. § 1327(b). But, as reflected above, the stay applies against the enforcement of a lien on a debtor's property under 11 U.S.C. § 362(a)(5), and the stay continues under 11 U.S.C. § 362(c)(2)(C) until the earlier of case closing, dismissal or discharge. None of these has occurred in the case, and the stay remains in effect against foreclosure of Movant's lien on Debtors' homestead to collect Movant's prepetition claim.

*Should relief from the 11 U.S.C. § 362 stay be granted to permit Movant to foreclose its lien on Debtors' homestead to collect its prepetition debt? Yes*

■ Movant has a secured claim for the full amount of its prepetition claim. The claim cannot be modified. Although Debtors' plan could have provided a reasonable cure period for prepetition delinquencies owing Movant, it did not. *See,* 11 U.S.C. § 1322(b)(5). The plan was confirmed on September 12, 1996, and the reasonable time for cure has passed. The stay should be lifted to permit Movant to collect the prepetition claim through foreclosure of its lien.

### Application Of 11 U.S.C. § 1322(b) And § 1327(c) To Movant's Postpetition Debt

*Can § 1322(b) and § 1327(c) be used to strip Movant's lien from the postpetition debt? No*

Movant's postpetition claim could not be modified under § 1322(b)(2) for the same reasons discussed relating to Movant's prepetition claim. But even if it could be, Debtors' confirmed plan does not provide for Movant's postpetition claim. Additionally, neither Movant, nor anyone else on Movant's behalf, filed a postpetition claim. For the same reasons discussed earlier, § 1327(c) did not strip the lien either.

### Application Of The § 362 Stay To Foreclosure Of Movant's Lien To Collect The Postpetition Debt

*Does the § 362 stay prevent postconfirmation foreclosure of the lien to collect postpetition debt? No*

11 U.S.C. § 362(a) does not prohibit a creditor from collecting a postpetition debt from a debtor, or from property of a debtor. The stay does prohibit the collection a postpetition debt from property of the estate. See, 11 U.S.C. § 362(a)(3) and (4). In this case, all property of the estate vested back in Debtors upon confirmation of their plan. See, 11 U.S.C. § 1327(b). Additionally, the liened property has been claimed exempt by Debtors without objection. The stay does not prohibit Movant from foreclosing its lien on Debtors' homestead in collection of postpetition debt.

### Movant's Prior Postconfirmation Collection Efforts And The § 362 Stay

*Did Movant's postconfirmation state court litigation and garnishments in collection of postpetition debt violate the § 362 stay? No*

For the same reasons discussed above, Movant's postpetition state court collection efforts, including wage garnishments, did not violate the automatic stay. 11 U.S.C. § 362(a) does not prohibit a creditor from collecting a postpetition debt from a debtor, or, or from property of a debtor. All estate property vested back in Debtors upon confirmation of their plan.

### Bankruptcy Determination Of Movant's Postpetition Claim

*Should this Court determine Movant's postpetition allowed claim? No*

Debtors argue that their damages for Movant's violation of the 11 U.S.C. § stay more than offset whatever the allowed amount of Movant's claim might be. But, as we have seen, Movant has not violated the automatic stay, and Debtors have sustained no damages.

1. Debtors' complaints regarding the amount of attorneys' fees charged in relation to the total debt sought to be collected are disingenuous. Run up of the fees is likely the Debtors' own making. The entire bankruptcy case is replete with defaults by Debtors. Motions to dismiss the case for failure to timely make

Additionally, Debtors challenge the postpetition charges, especially as they relate to attorneys' fees, $3,595.12 of the total debt of $5,295.22. Debtors argue that the fees are unreasonable.[1] They urge that these issues be resolved through claims litigation in this court, arguing:

[t]he proper procedure for the Movant is to file a proof of claim under Section 1305 and for this Court to determine whether there is a post-petition claim. In the alternative Movant may wait until the completion of the plan and seek payment of it's claim by judicial action at that time. In any event, the amount of the claim should be determined by this Court.

*(Debtors' Response, November 23, 1999, p. 3., par. 7)*

11 U.S.C. § 1305 does not require Movant to file a postpetition claim. The provision is permissive, not mandatory. Postpetition creditors, who do not look to a debtor's estate to collect postpetition debt, need not file claims. They may elect to proceed elsewhere against a debtor or debtor's property to collect the debt instead. Movant has not filed a postpetition claim, and Debtors have not filed a claim on Movant's behalf. Movant is entitled to elect not to participate in the bankruptcy case for payment of its postpetition debt, and to seek collection from Movant's collateral.

## IV.

### DISPOSITION

Based on the forgoing, it is hereby **ORDERED**:

1. Dokmo II Townhouse Association, Inc. Is granted relief from the 11 U.S.C. § 362 stay to foreclose its lien on Debt-

payments to the Chapter 13 trustee have been brought repeatedly. Cures have been typically made at the last minute only to be immediately followed by new defaults, triggering another motion to dismiss. There is presently pending a trustee's motion to dismiss the case.

ors' homestead to collect Dokmo II's prepetition debt.

2. Dokmo II is entitled to foreclose its lien on Debtors' homestead to collect Dokmo II's postpetition debt.

3. Dokmo II's past postconfirmation collection activity in attempt to collect its postpetition debt did not violate the 11 U.S.C. § 362 stay.