In re Robert E. PERRY, Debtor.

No. 05–32106.

United States Bankruptcy Court,
N.D. Ohio.

Dec. 14, 2005.

Elliot H. Feit, Toledo, OH, for debtor.

Joseph Szyperski, Toledo, OH, for Creditor.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This matter comes before the Court upon the Debtor's Motion to Avoid Lien, and the Lienholder's opposition thereto. Both Parties have filed briefs regarding their respective positions on the Motion of the Debtor, which the Court has now had the opportunity to review. Based upon this review, the Court, for the reasons herein stated, finds that the Debtor's Motion should be Denied.

### FACTS

On June 24, 1994, Glass City Federal Credit Union (hereinafter the "Creditor"), obtained a judgment in state court against the Debtor, Robert Perry (hereinafter the "Debtor"). Based upon this judgment, the Creditor later secured a judgment lien on the Debtor's residence. Currently, the outstanding balance owed on the judgment is $2,000.66.

At the time the Creditor's judgment lien arose, a prior existing mortgage encumbered the Debtor's residence. As drawn from the Debtor's bankruptcy petition, the balance secured by the mortgage is approximately $56,000.00, well in excess of the property's value of $42,000.00. Neither the validity of the preexisting mortgage nor these valuations were disputed by the Parties.

In March of 2005, the Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. In his petition, the Debtor listed the Creditor as unsecured. The Debtor's proposed plan of reorganization, as later confirmed by this Court, set forth that all allowed unsecured claims would be paid at 100 percent. Additionally, the Plan provided that secured claims will be retained and paid in full to the extent of the value of their collateral, and that claims in excess of the collateral value will be treated as unsecured. The Creditor did not object to these terms.

### DISCUSSION

■ The goal of a debtor,—the bankruptcy discharge—only extends to the debtor's personal liability on a debt. Thus, as a general rule, liens, as an *in rem* interest, pass through bankruptcy. *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) However, § 506(d), upon which the Debtor relies for his action, modifies this rule by providing:

[t]o the extent the lien secures a claim against the debtor that is not an *allowed secured claim*, such lien is void.

(emphasis added).

However, the ability of a debtor to use this section has been constrained. To put things in an historical context, Chapter 7 debtors had looked to § 506(d) to avoid liens by reading the provision as complementary with paragraph (a) of this same section; this provision bifurcates claims into their constituent secured and unsecured components, by providing:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a). Thus, the logic went that, with paragraph (a) of § 506 limiting

the amount of an allowed secured claim to the value of the collateral, paragraph (d) then, by allowing avoidance of a lien to the extent it is not an allowed secured claim, would effectuate the avoidance of the unsecured portion of the lien.

However, in *Dewsnup v. Timm*, the Supreme Court of the United States rejected, at least insofar as it concerns a Chapter 7 case, that a debtor could avoid that portion of a lien that was determined under § 506(a) to be unsecured; a process known as lien stripping. 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In coming to this decision, the Court accepted the lienholder's argument that an " 'allowed secured claim' in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision." *Id.* at 415, 112 S.Ct. 773. Rather, the phrase "allowed secured claim" was to be read as referring to a claim that was first allowed and then secured. Later, in *In re Talbert*, the Sixth Circuit Court of Appeals extended this reasoning to the type of situation represented by the Creditor's lien: where, as opposed to the lien being partially unsecured as in *Dewsnup*, the lien is completely unsecured. 344 F.3d 555 (6th Cir.2003).

Together then, the decisions of *Dewsnup* and *In re Talbert* establish the Rule in the Sixth Circuit that a Chapter 7 debtor· may not, through the bifurcation process of § 506(a), avoid the unsecured portion of a lien under § 506(d). Consequently, the only avenue available for the Chapter 7 debtor to avoid a lien under § 506(d) is to have the claim, itself, disallowed. To· borrow from the language of the *In re Talbert* Court: "Section 506 was intended to facilitate valuation. and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a Chapter 7 debtor." *Id.* at 561. Lien avoidance, however, is not so narrowly

confined in those other Chapters of the Bankruptcy Code which involve debt reorganization, as opposed to liquidation, including that under Chapter 13 of the Code as filed by the Debtor.

In formulating a plan of reorganization, § 1322(b)(2) provides that "the plan may modify the rights of holders of secured claims." Among other things, the power to "modify," absent in a Chapter 7, confers upon a debtor the power to bifurcate a secured claim, for allowance purposes, into its secured and unsecured components as provided for in § 506(a). *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1222 (9th Cir.2002). And that once bifurcated, § 1325(a)(5)(B) then allows a debtor tò retain encumbered property so long as the debtor pays to the creditor the value, as of the effective date of the plan, of the secured claim as had just been determined under § 506(a). *In re Nicewonger*, 192 B.R. 886 (Bankr.N.D.Ohio 1996); *Bank One, Chicago, NA v. Flowers*, 183 B.R. 509 (N.D.Ill.1995); *Ford Motor Credit Co. v. Lee (In re Lee)*, 162 B.R. 217, 223–24 (D.Minn.1993). Although not accomplished under § 506(d), the operation of these provisions together effectively operate to avoid a creditor's lien to the extent it is not secured.

This ability to, in effect, avoid the unsecured portion of a creditor's lien is often referred to as cram down, and was recognized, *in dicta*, by the Supreme Court of the United States in *Associates Commercial Corp. v. Rash (In re Rash)*:

> We resolve in this case a dispute concerning the proper application of ·§ 506(a) of the Bankruptcy Code when a bankrupt debtor has exercised the 'cram down' option for which Code § 1325(a)(5)(B) provides.
>
> . . .
>
> Under the cram down option, the debtor is permitted to keep the property over

the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, i.e., the present value of the collateral, see § 1325(a)(5)(B)(ii). The value of the allowed secured claim is governed by § 506(a) of the Code.

520 U.S. 953, 960, 117 S.Ct. 1879, 1879, 138 L.Ed.2d 148 (1997). However, an exception—and one which almost swallows the rule—of the right of a Chapter 13 debtor to modify a secured creditor's rights occurs when, as is in this matter, it involves, "a claim secured only by a security interest in real property that is the debtor's principal residence[.]" 11 U.S.C. § 1322(b)(2). This is often referred to as the anti-modification clause, whose scope was addressed by the Supreme Court in the case of *Nobelman v. American Savings Bank,* 508 U.S. 324, 328–32, 113 S.Ct. 2106, 2109–2111, 124 L.Ed.2d 228 (1993).

In a sort of *Dewsnup* redux, the Supreme Court in *Nobelman* held that so long as a creditor maintains a secured claim on the debtor's residence, any bifurcation of that interest into its secured and unsecured components under § 506(a) would result in a modification of its "rights," and thus violate § 1322(b)(2)'s anti-modification provision:

> to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan in the manner petitioners propose would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtors principal residence.

*Id.* at 506. Yet, like *Dewsnup,* the *Nobelman* decision still left open the question regarding that of a completely unsecured lien.

But as occurred in the post-*Dewsnup* case of *In re Talbert,* the Sixth Circuit later addressed this particular issue of law, holding in the case of *Lane v. W. Interstate Bancorp (In re Lane):*

> The implications of this portion of the Nobelman opinion, it seems to us, do not extend beyond the situation to which the language just quoted alludes-the situation in which the lienholder's claim for the amount due has both a secured component and an unsecured component.
>
> . . .
>
> If a claimant's lien on the debtor's homestead has no value at all, on the other hand, the claimant holds an 'unsecured claim' and the claimant's contractual rights are subject to modification by the plan.

280 F.3d 663, 668–69 (6th Cir.2002). Thus, dissimilar to a Chapter 7, a debtor may cram down a secured interest in their residence despite that interest failing to attach to any equity in the underlying collateral.

To now place things in context. Under the legal framework set forth up to this point, the Debtor, having filed a Chapter 13, as opposed to a bankruptcy under Chapter 7, is entitled to modify the rights of the holder of a secured claim pursuant to § 1322(b)(2). Modification may include voiding a security interest, such as that of the Creditor's judgment lien, to the extent that it is unsecured under the bifurcation formula prescribed in § 506(a). And while, under § 1322(b)(2)'s anti-modification clause, the ability to modify a claim secured only by a debtor's principal residence is proscribed, this clause has no applicability when, as here, the lien does not attach to any equity in the debtor's residence. *Id.*

■ All the same, while the Debtor has the power to modify, modification is not automatic. Section 1322(b)(2) explicitly contemplates that a debtor may "leave unaffected the rights of holders of any class of claims[.]" Thus, an affirmative act is required to modify a creditor's claim. While no set procedure exists on how to modify a claim, at the very least with § 1322(b) governing permissible plan provisions, modification and cram down should be set forth in the plan.

■ In this way, the Debtor argues that with the Creditor's judgment lien having no value as a secured claim for purposes of § 506(a), the following provisions in his confirmed plan of reorganization served to vest in him the interest he maintains in his residence free and clear from the claims of the Creditor:

The property of the estate shall vest in the Debtor on confirmation of this Plan free and clear of any claim or interest of any creditor provided for by this Plan. Secured Creditors will retain their liens and will be paid in full to the extent of the value of their collateral . . . in accordance with Section 506, and to the extent that their claims are in excess of the collateral value, they will be treated as unsecured.

(Doc. No. 2). And with regards to the Debtor's position, these provisions undoubtably exhibit an intent on his part to cram down the unsecured portion of a secured party's claim, including the Creditor's. However, these provisions are also nonspecific, being boilerplate in their wording, creating a problem, both statutory and procedural in nature.

A plan must be confirmed to be effective against creditors. Hence, the effect of any modification placed in the debtor's plan is meaningless until the court confirms the plan, and this can only be done once the court finds that the plan meets the requirements set forth in § 1325, entitled "Confirmation of plan." Relevant in this matter, is paragraph (a)(5)(b) of this section which provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim *provided for by the plan*—

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]

(emphasis added). As previously pointed out, this provision requires that as a condition for cram down, that the creditor retain his lien on the secured portion of the collateral, as determined under § 506(a), until the allowed portion of that claim is paid in full.

Operating then in tandem with § 1325's requirements for confirmation is § 1327 which governs the effect of confirmation, providing:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor *provided for by the plan.*

(emphasis added). Paragraph (a) of this section generally operates so as to make those provisions of a confirmed plan *res judicata* as to all creditors and the debtor. Going down the ladder, paragraphs (b) and (c) of this section allow property to vest in the debtor free and clear of liens provided that the claim represented by the lien is paid in accordance with the cram down provision of § 1325(a)(5)(B). *In re Lee,* 156 B.R. 628, 630–31 (Bankr.D.Minn.1993), *aff'd,* 162 B.R. 217 (D.Minn.1993).

Read then in *pari materia,* while § 1322(b)(2) confers upon a debtor the power to modify a claim by authorizing bifurcating it into its secured and unsecured components under § 506(a), it is § 1325(a)(5)(b) and § 1327 which provide the mechanism by which a Chapter 13 debtor actually effectuates the cram down process thereby allowing them to retain encumbered property free from the *in rem* interest of the secured creditor. Yet, as italicized by the Court in both these sections, their applicability requires that the claim to be crammed down must have been "provided for by the plan."

In *Rake v. Wade,* the Supreme Court addressed this phrase, stating that it is commonly understood to mean "make a provision for or stipulate to something in a plan." Or that the plan "deals with, or even refers to a claim." *Rake v. Wade,* 508 U.S. 464, 473–74, 113 S.Ct. 2187, 2192–93, 124 L.Ed.2d 424 (1993) (defining with reference to §§ 1325(a)(5) and 1328(a), but noting that the same terminology is used elsewhere in a context that makes their meaning clear). In the context of cramming down a secured claim, this definitional requirement has been held to mean that a boilerplate provision is not sufficient; the creditor and its claim must be identified by name. *In re Rascon,* 321 B.R. 48, 52 (N.D.Cal.2005). *See also Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 92 (4th Cir.1995).

*But see In re Harnish,* 224 B.R. 91, 93–94 (Bankr.N.D.Iowa 1998). A case on point, and illustrative of the need for such a requirement is *In re Zimmerman,* 276 B.R. 598 (Bankr.C.D.Ill.2001).

In *In re Zimmerman,* the court framed the issue before it as this: "The issue presented is whether confirmation of a Chapter 13 plan, without objection of a secured creditor, avoids the creditor's lien, where the plan does not name the creditor or acknowledge its lien, but includes a provision that all creditors not classified as secured are deemed unsecured whose liens are void." *Id.* at 600. The court found the debtor's boilerplate language to be insufficient, stating:

> The rule that the debtors would have this Court adopt is that a valid lien secured by valuable property may be avoided through confirmation by the debtors' failure to properly acknowledge the lien as long as the Plan contains a general avoiding provision. This Court is of the opinion that Section 1327(c) permits lien avoidance where based on lack of collateral value but only where the affected creditor is specifically warned in the plan, and thus precludes the avoiding effect of the boilerplate plan provision here. This Court holds that where the Chapter 13 plan does not 'provide for' the holder of a secured claim, or where the debtor's reason for avoiding its lien is one that must be raised in an adversary proceeding, confirmation of the plan without objection by the creditor does not operate to avoid the creditor's lien, even though the plan contains a general provision that all creditors not classified as secured are deemed unsecured and their liens void.

*Id.* at 605–06.

Setting forth the creditor's name in the plan also appears to be a minimum threshold. For example, it has been held that,

"[i]n addition to identifying the creditor and its claim, a plan that seeks to eliminate a lien for lack of collateral value should give the creditor some explanatory detail, *e.g.,* that the collateral is destroyed or is worthless or is fully encumbered by a senior lien." *In re Fuller,* 255 B.R. 300, 306–07 (Bankr.W.D.Mich.2000). One court has even gone so far as to hold that a legal description of the property should be provided and, with regards to the situation presented in this matter, state that "the basis for the lien stripping is a lack of equity in that the first mortgage balance exceeds the property's value and include calculations to support this conclusion." *In re Bennett,* 312 B.R. 843, 848 (Bankr. W.D.Ky.2004).

■■■ When seeking to avoid a lien interest, requiring a degree of specificity so as to be "provided for by the plan" within the meaning of § 1325(a)(5)(b) and § 1327 makes sense. To begin with, liens are a property interest, thereby entitling them to deference. Additionally, a primary function served by a plan is to convey clear and concise information to a creditor as to how the debtor intends to treats its claim; creditors are not be expected to guess how their claim will be treated. Thus, while the question still remains open as to the degree of detail which is required to avoid a creditor's lien through a Chapter 13 plan, this much is certain: some specificity is required for a claim to be "provided for by the plan" for purposes of cramming it down under § 1325(a)(5)(b) or § 1327. This holding also has as its underpinning the United States Constitution.

■■ Lien interests are constitutionally protected interests. Ergo, before a party may be deprived of their lien interest, they must be afforded notice that comports with the due process requirements of the United States Constitution. The Supreme Court has described adequate notice as that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

When seeking to avoid a lien, such notice must reasonably appraise and impart to the lienholder that its interest is being placed at stake; a boilerplate provision would not appear to meet this threshold. This interplay between § 1327 and due process was explained in *In re Burgess*:

> Because Section 1327(c) has the rather harsh impact of actually dislodging a lien of a creditor who is 'provided for by the plan', it is imperative that this Court consider not only the wording of the plan but also the adequacy of notice and a determination of whether the due process rights of a secured creditor have been protected. A Chapter 13 plan must bear constitutional and statutory muster as to the vested property rights of secured creditors. Without the measure of protection afforded by clear language in the plan and sufficient notice to the creditor, the plan can be no more binding than if it had sat, unfiled, on the lawyer's desk.

163 B.R. 726, 729 (Bankr.M.D.Pa.1993) (internal citations and quotations omitted).

■■ For reasons then of statutory implementation, as well as concerns of due process concerns, it is the holding of this Court that when a debtor seeks to modify a secured party's right under § 1322(b)(2), by cramming down their interest under § 1325(a)(5)(B) and § 1327(b)/(c), this intent must be set forth with some particularity in the plan. At a minimum, this should impart to the creditor that its interest is being placed in jeopardy. Although there is no consensus if a further action is

then required when seeking cram down in a Chapter 13,[1] the sufficiency of such notice should mention the creditor by name in the plan followed by a description as to the treatment of its claim.

Under this light, of course, those two provisions of the Creditor's plan purporting to cram down the Creditor's lien simply do not rise to this level, the provisions being entirely boilerplate. Explained in a little greater detail, without its name being mentioned, it is highly questionable whether the Creditor, even though provided a copy of the Debtor's plan, could have deduced from the plan's language that the Debtor would seek to void its lien interest. For example, the two boilerplate plan provisions relied upon by the Debtor to avoid the Creditor's lien only mimic the language of the Bankruptcy Code; they do not impart additional information from which it could be deduced that they will be sought to be applied in a manner that will result in lien avoidance. In addition, the mere fact that the Debtor listed the Creditor as unsecured in his petition does not correct this deficiency as creditors do not receive a copy of the petition.

For all these reasons then, the Creditor's judgment lien cannot be said to constitute a claim "provided for by the [Debtor's] plan" with the meaning of either § 1325(a)(5)(B) and § 1327(b)/(c); nor, given the plan's completely generic nature, does it comport with the Constitutional requirements of due process for purposes of cramming down the Creditor's lien. As a practicable matter, to hold otherwise would allow lien stripping by ambush. *See, e.g., In re Henline,* 242 B.R. 459, 465 (Bankr.D.Minn.1999). This result is also entirely consistent with the Sixth Circuit's decision in *In re Lane* which, although allowing the cram down of a valueless secured interest on a debtor's principal residence, addressed the issue in the context of a plan which had, specifically by name, provided that the creditor holding the junior secured interest "would be paid only as an unsecured claimant."280 F.3d at 665. *See also Citizens Fed. Sav. & Loan Ass'n of Dayton v. Rose,* 15 B.R. 164 (Bankr. S.D.Ohio 1981) (questions as to the modification of rights of security interest in real estate should be raised prior to confirmation and not after creditor has already accepted plan and modification, if any then, is only contrived.)

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

***ORDERED*** that the Motion of the Debtor, Robert E. Perry, to Avoid the

---

1. Four possible methods (or possibly a combination thereof) could be used to strip off a lien (1) through plan provisions; (2) through an adversary proceeding; (3) through a claim objection; and (4) through motion practice. *In re Bennett,* 312 B.R. 843, 846 (Bankr. W.D.Ky.2004). Previously, this Court has held that an adversary proceeding at least one necessary component. *In re Burner,* 321 B.R. 432 (Bankr.N.D.Ohio 2004). Other courts, however, have held that this is not necessary by concluding that lien avoidance is not an action to determine the "validity," "priority," or "extent" of a lien so as to require the commencement of an adversary proceeding under FED.R.BANK.P. 7001(2). *See In re Bennett,* 312 B.R. at 846–47. However, at the same time, these courts treat such an action as a "core proceeding," issuing final orders and judgments. But this is not logically consistent, as a "core proceeding" is defined with reference to these exact same terms—that regarding "determinations of the validity, extent, or priority of liens[.]" 28 U.S.C. § 157(b)(2)(K). Notwithstanding, this particular issue is not before the Court, with this analysis confined to the sufficiency of the language contained in the Debtor's plan of reorganization.

Lien of the Creditor, Glass City Federal Credit, be, and is hereby, DENIED.